IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BONITA JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:15-cv-928-TFM |
| | ) | [wo] |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.§§ 401, *et seq.*, Bonita Jordan ("Jordan" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision.   When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).   Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c), and for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

### I. NATURE OF THE CASE

Jordan seeks judicial review of the Commissioner of Social Security Administration's decision to deny her application for disability insurance benefits.  United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405 (2006).  The court may affirm,

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

reverse and remand with instructions, or reverse and render a judgment.  *Id.*

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed.   The court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Winschel*, 631 F.3d at 1178 (stating the court should not re-weigh the evidence).   This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied."  *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 Fed. Appx. 811, 811 (11th Cir. 2015) (citing *Kelley*).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).   If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also*

*Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citation omitted).  The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted).  There is no presumption that the Secretary's conclusions of law are valid.  *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III.  BACKGROUND AND PROCEEDINGS

Jordan claims disability because of degenerative disc disease, arthritis, depression, and low back pain.  (R. 78-80, 97, 110). Following initial administrative denial of her claim, Jordan requested a hearing before an administrative law judge ("ALJ") (R. 11).  ALJ Walter V. Lassiter ("the ALJ") convened a video evidentiary hearing on September 16, 2013. (R. 66-108). On May 19, 2104, the ALJ convened a second hearing in person. (R. 33).  The ALJ convened the second hearing because the ALJ had sent Jordan for a consultative examination and wanted to review the results plus Jordan's attorney had additional medical evidence she wanted the ALJ to consider. (R. 33).  At each hearing, the ALJ received direct testimony from Jordan.   The remaining evidentiary record consisted of medical reports from treating sources and residual functional capacity assessments from those who examined Jordan and/or reviewed Jordan's

medical records upon request of Alabama Disability Determination Services.[1] The ALJ rendered

an unfavorable verdict on June 24, 2014. (R. 11-25).  On October 16, 2015, the Appeals Council

denied Jordan's request for review (R. 1-6).  This Social Security Appeal was filed on December

16, 2015.  *See* Doc. 1, Complaint.

## IV. ADMINISTRATIVE DECISION

### A.  Sequential Evaluation Process

The Commissioner utilizes a five-step, burden-shifting analysis to determine when

claimants are disabled.  20 C.F.R. §§ 404.1520;[2] *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th

Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 Fed. Appx. 456, 458 (11th Cir. 2015).  The ALJ

determines:

(1)     Whether the claimant is currently engaged in substantial gainful activity;

(2)     Whether the claimant has a severe impairment or combination of impairments;

(3)     Whether the impairment meets or exceeds one of the impairments in the listings;

(4)     Whether the claimant can perform past relevant work; and

(5)     Whether the claimant can perform other work in the national economy.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  When a

claimant is found disabled – or not – at an early step, the remaining steps are not considered.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  This procedure is a fair and just way

for determining disability applications in conformity with the Social Security Act.  *See Bowen v.*

*Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v.*

---

[1]     Harold R. Veits (R. 110-121).  "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves."  20 C.F.R. § 404.1616(a).

[2]     For the purposes of this appeal, the Court utilizes the versions effective until March 27, 2017 as that was the version in effect at the time of the ALJ's decision and the filing of this appeal.

*Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4.  *See Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. Appx. 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39.   A *prima facie* case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden. Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC").  20 C.F.R. § 404.1520(a)(4).  RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations.  *Phillips*, 357 F.3d at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  In order to do this, the ALJ can either use the Medical Vocational Guidelines[2] ("grids") or call a vocational expert.  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Id*. at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.  Otherwise, the ALJ may use a vocational expert.  *Id*.  A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments.

---

[2]        *See* 20 C.F.R. pt. 404 subpt. P, app. 2

*Id*.  In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.  *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

### B.    Findings and Conclusions

Employing the five-step process, the ALJ found that Jordan has not engaged in substantial gainful activity since the alleged onset date (Step 1); has severe impairments (Step 2);[3] the impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth in the listings (Step 3); and Jordan can perform her past relevant work (Step 4).  (R. 23-25).  As such, Jordan did not demonstrate that she met her prima facie case for disability.  While the ALJ found Jordan was not disabled, the ALJ still continued his analysis and alternatively found there are a significant number of jobs in the national economy which Jordan can perform and thus found Jordan not disabled under the Act.  As such, even if the prima facie case had been established, Jordan still was not disabled under the five-step analysis.

At Step Four, the ALJ found Jordan had the RFC to perform light work.  (R. 15).  Specifically, after evaluating the entire record, the ALJ determined Jordan is be able to alternate between sitting, standing, and walking every 60 minutes, but would not need to leave her workstation. (R. 15).  Further, the ALJ noted Jordan could sit a total of six hours over the course of an eight-hour work day; stand and/or walk up to six hours total over the course of an eight-

---

[3]      The ALJ found the following "severe" impairments: total right hip arthroplasty (8/09) due to failed partial replacement (6/09) secondary to right hip degenerative joint disease and labral tear; status post extreme lateral total disc replacement (9/10), due to degenerative disc disease and modic changes at L 4-5, and degenerative disc disease at the L5-S1 (minimal); post-laminectomy syndrome; history of syncope and polyarthritis; osteoarthritis of the right knee; lumbar radiculopathy, right-side; and degenerative disc disease, cervical spine (20 CFR 404.1520(c)). (R. 13-14).

hour work day; but could not stand or walk on uneven terrain.  Jordan can occasionally use her lower extremities for pushing, pulling, and the operation of foot controls; occasionally use her upper extremities for handling and fingering.  Jordan could not climb ladders, ropes, poles and scaffolds but could occasionally climb ramps and stairs.  Jordan could not work in extreme cold, but could occasionally work in extreme heat, humidity and wetness.  Jordan could occasionally balance and stoop; rarely crouch (up to a total of one hour over the course of an eight-hour workday); and could not crawl.  Jordan could occasionally work while exposed to dusts, gases, fumes, and odors, but could not work in poorly ventilated areas or while exposed to vibration. Jordan could occasionally operate motorized vehicles, but could not work at unprotected heights, or around dangerous equipment. (R. 15).  With these limitations, the ALJ determined Jordan could perform past relevant work as a customer service representative, reservations clerk, and front desk clerk.  (R. 23-25).

Alternatively, the ALJ moved on to Step Five to determine whether Jordan could perform other jobs in the national economy and determined there are jobs that exist in significant numbers in the national economy that Jordan could perform.  (R. 24-25).  The ALJ utilized the Medical-Vocational Rules and Vocational Expert testimony regarding jobs in existing in the national economy which Jordan could perform. (R. 54-62, 97-107).  The VE, at the first hearing, gave several examples of jobs which Jordan could perform such as her past work as a customer service representative, a reservations clerk, or a sales representative. (R. 97,99). Other jobs in the national economy which the ALJ determined Jordan could perform after hearing from the VE were information clerk, general office clerk, order clerk, office helper, mail clerk, and hand packer.  (R. 99-101).   At the second hearing the VE gave several examples of jobs Jordan could perform.  (R. 57-60). The ALJ, using testimony from the VE, determined that in addition to her

past relevant work of customer service representative, reservations clerk, and front desk clerk,

Jordan could be a tagger, an inspector, a garment sorter. (R. 57-60). Consequently, the ALJ

found Jordan has not been disabled since the alleged onset date.  (R. 49).

## V. ISSUES

Jordan raises two issues on appeal:

(1)     Whether the ALJ erred in rejecting an opinion of Cheryl Goyne, a treating
         physician.

(2)     Whether the ALJ failed to consider the side effects of medications in the
         RFC analysis.

*See* Doc. 12 at p. 4.[3]

The Commissioner re-characterizes the issue as whether substantial evidence

supports the Commissioner's Decision that Plaintiff could perform her past relevant work

and was not disabled.  *See* Doc. 13 at p. 1.[4]

## VI. DISCUSSION AND ANALYSIS

### A.     Whether the ALJ properly evaluated the medical opinions of the record

Jordan alleges the ALJ rejected her treating physician's opinion without providing

adequate reasons for rejecting and discrediting Dr. Cheryl Goyne's opinion.   The regulations

give preference to the opinion of the treating physicians.    20 C.F.R. § 404.1527(d)(1)-(2);

*Winschel*, 631 F.3d at 1179 ("Absent good cause, an ALJ is to give the medical opinions of

treating physicians "substantial or considerable weight.") (internal citations and quotations

---

[3]        The Court uses the PDF page numbers when referencing Plaintiff's brief.

[4]        In the briefing schedule, the Court stated "The Commissioner's reply brief will address with
specificity each issue raised by the plaintiff in a manner consistent with the issues as raised in the
numbered paragraphs contained in the Statement of Issues."   *See* Doc. 3. Ultimately, the Commissioner
does essentially address the Plaintiff's issues.   The Court is concerned at the growing trend by the
Commission's briefs in re-characterizing the Plaintiff's issues as one issue relating to substantial evidence
despite the instruction by the Court.

omitted).  However, "the ALJ has the discretion to weigh objective medical evidence and may choose to reject the opinion of a treating physician while accepting the opinion of a consulting physician…[but] if he follows that course of action, he must show 'good cause' for his decision." *Gholston v. Barnhart*, 347 F.Supp.2d 1108, 1114 (M.D. Ala. 2003); *see also Phillips*, 357 F.3d at 1240 (quoting *Lewis*, 125 F.3d at 1440) (The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary.").  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).  In other words, the Eleventh Circuit has found good cause for discounting a treating physician's report when the report "is not accompanied by objective medical evidence or is wholly conclusory." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir.1991)).  Additionally, there is good cause where the treating physicians' opinions are "inconsistent with their own medical records[.]" *Roth v. Astrue*, 249 Fed. Appx. 167, 168 (11th Cir. 2007) (citing *Lewis*, 125 F.3d at 1440). However, the ALJ must clearly articulate his reasons for disregarding the opinion of a treating physician.  *Winschel*, 631 F.3d at 1179.  Thus, "[w]hen the ALJ articulates specific reasons for not giving the treating physician's opinion controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Schuhardt v. Astrue*, 303 Fed. Appx. 757, 759 (11th Cir. 2008) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

The ALJ considered treatments records from many sources including Dr. Goyne, a treating physician, and other treating physicians.  Ultimately, the ALJ gave some weight to the

opinion of Dr. Goyne but noted that even Dr. Goyne did not conclude Jordan is permanently disabled. (R. 22).  Dr. Goyne opined that Jordan could not perform work at that time.  (R. 22). The decision by the ALJ to assign some but not great weight to the opinion of Dr. Goyne is correct and supported by other medical evidence before the ALJ.  First, the opinion of Dr. Goyne is outside the date last insured.  Ultimately, Dr. Goyne's opinion to the effect that Jordan could not work at that time is a conclusory statement and to the extent Dr. Goyne reflects on RFC, the opinion is not dispositive because it the Commissioner's role to determine RFC.  *See* 20 C.F.R. § 404.1527(a)(2), (c)(2), (d)(1); Social Security Ruling (SSR) 96-5p, 1996 WL 374183, *2, 1996 SSR LEXIS 2 (July 2 1996); *Bell v.  Bowen*, 796 F. 2d 1350, 1353-54 (11th Cir. 1986); *see also Beegle v. Soc. Sec. Admin., Comm'r*, 482 Fed. Appx. 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive"); *Maffia v. Comm'r of Soc. Sec.*, 291 Fed. Appx. 261, 263-64 (11th Cir. 2008) ("Opinions on some issues, such as whether a claimant is disabled, the assessment of a claimant's RFC, and the application of vocational factors, are 'opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case.'").

Next, even within the medical records made by Dr. Goyne which were considered by the ALJ, there is evidence consistent with the decision not to find Jordan disabled.    For instance, a treatment note from Dr. Goyne indicates, "Bonita is doing well.  Since our last visit she went back to see Dr. Vulcan in Georgia, the orthopedist who did her disk replacement. She states that he identified a trigger point in her right hip and injected it and it helped her considerably.  She is back to baseline, i.e. recovered from the slip and fall.  Her pain is predominantly with standing still or sitting and she does manage to walk on a treadmill regularly." (R. 442).  Notes by Dr.

Goyne indicate Jordan self-reported her pain level was 2/10, that she has good exercise habits and walks 2-3 miles on a treadmill about 5 times a week. (R. 442). Another note by Dr. Goyne indicates Jordan is doing so well with regard to pain control that Jordan wants to try coming off the Duragesic patch medication. The same note indicates Jordan self-reported her pain as level 2/10. (R. 446). Later, Dr. Goyne's notes indicate that Jordan rated her pain as a level 2/10, that Jordan had a normal gait and stance, and was wearing boots with heels. (R. 449). In addition, the ALJ concluded the tenor of the notes written indicates Dr. Goyne had concerns about Jordan being a medication seeker. (R. 437). Other notes by Dr. Goyne indicate that Jordan appeared normal, alert, and did not appear ill or uncomfortable. Jordan reported her pain as level 3/10. The Court agrees that the ALJ was correct to assign some weight to the opinion of Dr. Goyne and conclude the totality of the course of treatment with Dr. Goyne and other providers indicates that Jordan is not disabled.

The ALJ gave a detailed treatment summary *vis a vis* Jordan and the weight he assigned to the opinions of the treating physicians and consulting physicians. (R. 15-22). It is not the role of the court to reweigh the evidence but to examine the evidence to conclude whether there was evidence to support the Commissioner's decision. *Chater*, 84 F.3d at 1400; *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)) ("It is not for this court to 'decide the facts anew, make credibility determinations, or re-weigh the evidence.'").

The burden ultimately rests with Jordan to demonstrate her disability. *Doughty v. Apfel*, 245 F.3d 1274, 1276 (11th Cir. 2001). The Court concludes Jordan has not met her burden and other weighty evidence was before the ALJ to conclude substantial evidence supports the Commissioner's decision that Jordan is not disabled under the Act and its attendant regulations.

**B.     Whether the ALJ properly considered the side effects of medications in the RFC analysis.**

Jordan argues the ALJ did not address the effects of medication in his RFC analysis.  The Court disagrees.  Jordan is correct that the ALJ did not explicitly address point by point the effects of prescription medication in the RFC analysis, nonetheless the record demonstrates the ALJ considered the side effects of medication and discounted the extent of the effects upon Jordan.  Jordan told the ALJ during the hearings about various side effects from her prescription medications (R. 41, 44, 89).  In addition, some of the medical records indicate several physicians took various courses to deal with the side effects of medication such as lowering dosages, changing frequency of dosages, discontinuing medications, changing medications, or prescribing medications to alleviate a given symptom.  (R. 433, 435, 437, 438, 448).  Nonetheless, it is clear to the Court that the ALJ reviewed all of the medical records and the testimony and concluded explicitly that some of the complaints and symptoms Jordan had did indeed exist, but not to the extent she asserted nor were they were disabling.  (R. 22).  The ALJ listed various reasons to discount Jordan's testimony and other medical opinions. (R. 16, 19, 20, 21, 22).  Simply put, much of the evidence related to medication side effects falls outside the date last insured.  To the extent the side effects may relate back, the Court concludes the ALJ provided ample reasons and cited medical records to support RFC determination.

Jordan points to the report of Dr. Adejii that pain and the secondary effects of medication were limiting factors. *See* Doc. 12 at p. 13, n. 61 (citing R. 1011).  Jordan does not take into account that the ALJ gave great weight to the overall opinion of Dr. Adejii as his findings were in accord with the conclusions of the ALJ (R. 20).  The ALJ simply did not find the report from Dr. Adejii consistent with other examinations of Jordan and Jordan's function report.  (R. 21).

Jordan also cites references to the negative side effects prescription medication upon her. *See* Doc. 12 at p. 14. Jordan specifically cites Dr. Blanton (an examining psychologist) and Dr. Volcan (Jordan's back surgeon). (R. 1019-1020, 1023). The Court agrees that Dr. Blanton and Dr. Volcan do express concerns about the side effects of medication, but the ALJ properly took those side effect opinions into account in arriving at the RFC determination. The ALJ expressly found Dr. Volcan's statement about medication side effects to be equivocal. (R. 21). Indeed, the statement was "Her narcotic use for pain relief may represent a problem…" (R. 1021). Even with the equivocal nature of the statement, Dr. Volcan said Jordan could do clerical work. (R. 21). In any event, the ALJ went into detail as to his reasons to discount Dr. Volcan. (R. 21). Likewise, the ALJ stated his reasons to discount Dr. Blanton's opinion as well. (R. 21). While Jordan disagrees with the ALJ, at this juncture it is not the role of the court to reweigh the evidence or to make credibility determinations anew. *Chater*, 84 F.3d at 1400.

By her own admission, Jordan engages in certain activities of daily living which are inconsistent with her self-serving claims of medication side effects. Jordan said she cleans her pool, cooked an extensive Thanksgiving meal, and drove five hours to medical appointments. (R. 22). In addition, Jordan shops on-line and in stores, drives, performs household chores such as laundry, light cleaning, and ironing. (R. 22). Jordan does not use a cane or other assistive device. (R. 22). Finally, Jordan also reported her pain levels at the low end of the 10-point pain scale.

Jordan also fails to take into account that, fairly read, the gist of her claim has been pain. While she did mention the side effects of medication at her hearing, the references were brief and one of the references was to medication which offset a side effect -nausea. (R. 41). Jordan had two hearings wherein she could but did not emphasize medication side effects as if they were a

significant part of her disability claim.  Where there is little or no evidence of disabling side effects from medication, the ALJ has no duty to further address the effects.  *See Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992).  The ALJ explicitly took into account the symptoms of which Jordan complains but did not find them credible to the degree Jordan alleges. (R. 22).

All of the foregoing, plus the medical evidence is ample reason for the ALJ to find Jordan has sufficient RFC to find Jordan is not disabled under the Act.  Substantial evidence supports the ALJ's RFC finding and conclusion that Jordan could perform past employment (Step 4). Further, there was substantial evidence for the ALJ to determine Plaintiff can perform jobs that exist in significant numbers in the national economy (Step 5).  As such, the ALJ's determination that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence.

## VII.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court concludes that the ALJ's non-disability determination and denial of benefits is supported by substantial evidence and no legal error was committed.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED**.  A separate judgment is entered herewith.

DONE this 29th of March, 2017.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE